NATIONAL LABOR RELATIONS BOARD
Paul A. Thomas (CA Bar No. 280445)
Paul.thomas@nlrb.gov
1015 Half Street, S.E.—Fourth Floor
Washington, D.C. 20003
202-273-3788

Attorney for Defendants

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON.COM SERVICES LLC and AMAZON LOGISTICS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, *et al.*, <br><br> Defendants. | Case No. 2:24-cv-09564-SPG-MAA <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES................................................................................ ii

FACTS ................................................................................................................ 1

LEGAL STANDARD ......................................................................................... 5

ARGUMENT ...................................................................................................... 5

   A.      Congress has jurisdictionally barred injunctive relief in cases involving or growing out of labor disputes. ............................................................. 5

   B.      Amazon is not likely to succeed on any of its claims........................... 7

      1.   Failure to allege causal harm dooms Amazon's removal claims. ........ 7

      2.   Amazon's Board member removal claims are contrary to precedent. ................. 9

      3.   NLRB ALJs' removal protections are constitutional under binding and persuasive precedent.................................................................. 12

   C.      Amazon has not met its burden to show irreparable harm. ............... 17

   D.      The public interest and the balance of the equities disfavor an injunction. ....... 19

CONCLUSION ................................................................................................. 21

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alivio Med. Ctr. v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068 (N.D. Ill. Sept. 13, 2024) ................................................................................................ 10, 17, 21

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ...................................... 5

*Alpine Sec. Corp. v. FINRA*, --- F. 4th ---, 2024 WL 4863140 (D.C. Cir. Nov. 22, 2024) ................................................................................ 18

*Ares Collective Grp. LLC v. NLRB*, No. CV-24-00517-TUC-SHR, 2024 WL 4581436 (D. Ariz. Oct. 25, 2024) ........................................................................... 8, 20

*Axon Enterprises, Inc. v. FTC*, 598 U.S. 174 (2023) .................................................. 6, 9, 18

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ........................................................... 18

*Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120 (9th Cir. 2024) ....................................... 18

*BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers—Transp. Div.*, 973 F.3d 326 (5th Cir. 2020) ......................................................................... 6

*Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235 (1970) .................................................................................... 5

*Burgess v. FDIC*, 639 F. Supp. 3d 732 (N.D. Tex. 2022), *appeal docketed sub nom. Burgess v. Whang*, No. 22-11172 (5th Cir. Dec. 5, 2022) .................................................. 8

*Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023) ...................................................................................... 8, 15, 16

*CFPB v. CashCall, Inc.*, 35 F.4th 734 (9th Cir. 2022) ................................................... 7

*CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2579 (2024) ................................................................................. 7, 8

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*"), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), *reinstating opinion in relevant part*, 104 F.4th 930 (5th Cir. 2024) ...................................................... 8

*Collins v. Dep't of Treasury*, 83 F.4th 970 (5th Cir. 2023) ......................................... 9

*Collins v. Yellen*, 594 U.S. 220 (2021) .................................................................... 7

ii

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 352 (5th Cir. 2024), *cert. denied*, No. 23-1323, 2024 WL 4529808 (Oct. 21, 2024) ................................. 10, 11, 12

*Cooling for Less, Inc.*, Case 28-CA-105006, 2014 WL 1871305 (2014) ............................... 2

*Cortes v. NLRB*, No. 1:23-cv-02954, 2024 WL 1555877 (D.D.C. Apr. 10, 2024), *appeal docketed*, No. 24-5152 (D.C. Cir. June 10, 2024) ............................................. 9

*Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021) .................................. 15, 16, 17

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024)............................................................................................. 19

*Dish Network Corp. v. NLRB*, 953 F.3d 370 (5th Cir. 2020) ........................................ 3, 11

*Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27 (1987).................................... 20

*Free Enterprise Fund v. PCOAB*, 561 U.S. 477 (2010) ................................................ 15, 16

*FTC v. Grand Canyon Educ., Inc.*, --- F. Supp. 3d ----, No. CV-23-02711-PHX-DWL, 2024 WL 3825087 (D. Ariz. Aug. 15, 2024) ........................................................ 11

*HonorHealth v. NLRB*, No. CV-24-03009-PHX-DJH, 2024 WL 4769772 (D. Ariz. Nov. 13, 2024) ................................................................................................ 8

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) .......................................... 9, 10

*In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749 (8th Cir. 2003) .............................................................................................................. 20

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702 (1982) ....................................................................................................... 6

*K & R Contractors, LLC v. Keene*, 86 F.4th 135 (4th Cir. 2023) ...................................... 7

*Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-cv-445, 2024 WL 4594709 (W.D. Mich. Oct. 25, 2024) .................................................................................. 9

*Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024), *petition for cert. filed*, No. 24-156 (Aug. 9, 2024) ............................................................................................ passim

*Miller*, 19 F.3d 449 (9th Cir. 1994) .......................................................................... 3

*Munaf v. Geren*, 553 U.S. 674 (2008) ....................................................................... 5

iii

*N.Y. Paving, Inc.*, 371 NLRB No. 139 (2022), *enforced per curiam*, No. 22-1266, 2023 WL
    7544999 (D.C. Cir. Nov. 14, 2023)....................................................................2

*Nathanson v. NLRB*, 344 U.S. 25 (1953) ......................................................................20

*Nken v. Holder*, 556 U.S. 418 (2009) ..............................................................................5

*Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380 (1st Cir. 1987) ..................19

*Ramspeck v. Fed. Trial Exam'rs Conf.*, 345 U.S. 128 (1953)..........................................14

*Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302 (11th Cir. 2024) ...................................7

*Sampson v. Murray*, 415 U.S. 61 (1974)........................................................................18

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ....................................................10, 11, 13

*Siegel v. Lepore*, 234 F.3d 1163 (11th Cir. 2000) ...........................................................19

*Small v. Avanti Health Sys.*, LLC, 661 F.3d 1180 (9th Cir. 2011) ..................................20

*Space Expl. Techs. Corp. v. Bell*, 701 F. Supp. 3d 626 (S.D. Tex. 2023) ..........................9

*SSA v. Carr*, 78 MSPR 313 (1998)....................................................................................3

*UAW Loc. 283 v. Scofield*, 382 U.S. 205 (1965)............................................................20

*United States v. Perkins*, 116 U.S. 483 (1886)...............................................................13

*VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-cv-02577, 2024 WL 4817175
(D.D.C. Nov. 17, 2024)…………………………………………………………...6

*WestRock Services, Inc.*, 366 NLRB No. 157 (2018)........................................................2

*Wiener v. United States*, 357 U.S. 349 (1958) ...............................................................10

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................................5

*YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-12173, 2024 WL 4119058 (E.D. Mich.
    Sept. 9, 2024) *application for writ of injunction denied*, No. 24A348 (U.S. Oct. 15, 2024)
    (Kavanaugh, J. in chambers)......................................................8, 12, 16, 17

**Statutes**

5 U.S.C.

    § 153(a) ............................................................................................................3

    § 153(d).......................................................................................................1, 16

§ 154(a) ................................................................................................................ 2

§ 160 ................................................................................................................ 1, 2

§ 160(a) ............................................................................................................. 11

§ 160(b) ............................................................................................................. 16

§ 160(c) ...................................................................................................... 2, 3, 11

§ 160(e) ............................................................................................................... 3

§ 160(f) ............................................................................................................... 3

§ 160(j) ............................................................................................................. 12

§ 557(b) ............................................................................................................. 14

§ 1202(d) ............................................................................................................. 3

§ 3105 ................................................................................................................. 2

§ 7521(a) ............................................................................................ 3, 13, 14, 16

29 U.S.C.

§ 107 ................................................................................................................... 5

§ 107(b) ............................................................................................................... 6

§ 108 ................................................................................................................... 6

§ 113 ................................................................................................................... 6

§ 113(c) ............................................................................................................... 6


**Other Authorities**

2 NLRB, Legislative History of the National Labor Relations Act, 1935, at 3255

(1949) .............................................................................................................. 10

2 Paul R. Verkuil et al., Administrative Conference of the United States,

Recommendations and Reports: *The Federal Administrative Judiciary* 803 (1992) ........ 14

H.R. Rep. 74-1371, at 4 (1935) .......................................................................... 10

Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory*

*Limits of Agency Independence*, 121 Colum. L. Rev. 1, 8, 69 (2021) ................... 12

NLRB Casehandling Manual, Part One § 10268.1 (June 2024) ........................................ 1

U.S. Constitution, Art. II, § 2, cl. 2 ........................................................................... 2

**Regulations**

29 C.F.R.

§ 102.34-.35 ....................................................................................................... 14

§ 102.35(a) ........................................................................................................... 2

§ 102.45(a) ......................................................................................................... 14

§ 102.46(a) ...................................................................................................... 2, 14

§ 102.48 .............................................................................................................. 14

§ 102.48(b) ........................................................................................................... 2

This case follows a recent trend of litigants who, rather than defend themselves on the merits in an administrative proceeding, take to federal district court with the extraordinary claim that every such administrative proceeding is unconstitutional. Plaintiffs Amazon.com Services LLC and Amazon Logistics, Inc. (together, "Amazon") are not entitled to preliminary relief halting the congressionally mandated procedure for resolving labor disputes, as Amazon has not satisfied any of the requirements for obtaining such relief. Accordingly, Amazon's Application for a Preliminary Injunction should be denied.

## **FACTS**

The National Labor Relations Board ("NLRB")[1] is the exclusive federal agency designated to protect employee rights under the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. § 151, *et seq.* The NLRA divides the powers of the General Counsel, which are prosecutorial, from those of the five-seat Board and its administrative law judges ("ALJs"), which are adjudicative.[2]

Under Section 10 of the NLRA, the Board has final authority to adjudicate allegations that an employer or union has committed an unfair labor practice ("ULP"). *Id.* § 160. Such allegations arise out of charges filed by members of the public; formal proceedings do not commence unless and until the NLRB's General Counsel, or her delegate, finds merit to the charge and issues a complaint. *Id.* §§ 153(d), 160(b). Such complaints are usually accompanied by a notice of hearing before an ALJ. NLRB Casehandling Manual, Part One § 10268.1 (June 2024), available at https://www.nlrb.gov/guidance/key-referencematerials/manuals-and-guides. Alternatively, a hearing may also be held "before the Board or a member thereof." *Id.*

---

[1] "NLRB" refers to the agency as a whole; "Board" refers to the five-member adjudicative body.

[2] The General Counsel also exercises "general supervision over all attorneys employed by the [NLRB] (other than [ALJs] and legal assistants to Board members) and over the officers and employees in the regional offices." 29 U.S.C. § 153(d).

1

§ 160(b). This administrative process is the exclusive mechanism provided by Congress to enforce most of the NLRA's proscriptions against unfair labor practices.

NLRB ALJs are appointed in accordance with the U.S. Constitution, Art. II, § 2, cl. 2, the Civil Service Reform Act, 5 U.S.C. § 3105, and the NLRA. 29 U.S.C. § 154(a); *WestRock Services, Inc.*, 366 NLRB No. 157, slip op. at 3 (2018). In presiding over unfair-labor-practice trials, NLRB ALJs' main role is to oversee the development of an administrative record and ultimately issue a "proposed report, together with a recommended order" to the Board. 29 U.S.C § 160(c); *see generally* 29 C.F.R. § 102.35(a) (enumerating powers of NLRB ALJs). Once an ALJ issues a decision and recommended order, parties may file "exceptions" on any contested issue, asking the Agency's five-seat Board to rule upon the matter. 29 C.F.R. § 102.46(a). After any timely exceptions are filed, the Board will consider and issue a final decision and order, either adopting the ALJ's decision with or without modifications, or issuing its own final decision, as necessary. 29 U.S.C. § 160(c); 29 C.F.R. § 102.48(b). In doing so, the Board is not bound to accept either the ALJ's findings of fact or conclusions of law. 29 U.S.C. § 160(c). Indeed, the Board has explicit statutory authority to take additional evidence upon notice to the parties. *Id.* If, however, no exceptions are timely filed, the Board issues a pro-forma order adopting the ALJ's findings, conclusions, and recommended order. 29 C.F.R. § 102.48(a). Even if no exceptions are filed, the Board may nonetheless modify the judge's recommended order, such as to conform to the Board's current remedial practices. *See, e.g.*, *Cooling for Less, Inc.*, Case 28-CA-105006, 2014 WL 1871305, at *1 n.1 (2014) (substituting a new notice to employees for the one recommended by the ALJ). And a Board order automatically adopting an ALJ's decision in the absence of exceptions is not precedential. *N.Y. Paving, Inc.*, 371 NLRB No. 139, slip op. at 6 n.11 (2022), *enforced per curiam*, No. 22-1266, 2023 WL 7544999 (D.C. Cir. Nov. 14, 2023).

The process for removing an ALJ employed by the NLRB—and indeed, by any other federal agency–is defined by statute. With a few exceptions, ALJs may be

removed "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). Removing an NLRB ALJ is a two-step process: the Board must bring an action to remove an ALJ, and the MSPB must determine that good cause for removal has been established. The MSPB has found "good cause" to remove or suspend ALJs for several reasons, including insubordination, misconduct, and poor performance. *E.g.*, *SSA v. Carr*, 78 MSPR 313, 327-28, 338 (1998). MSPB members can be removed "by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

The NLRB's Board comprises five members, appointed by the President with the advice and consent of the Senate, who serve staggered terms of up to five years. 29 U.S.C. § 153(a). NLRB Board members may be removed only "for neglect of duty or malfeasance in office." *Id.* In addition to issuing final decisions in unfair-labor-practice cases, the Board also conducts and certifies the outcome of union-representation elections under Section 9 of the Act, and promulgates rules and regulations to carry out the NLRA under Section 6. *Id.* §§ 160(c), 159, 156. But importantly, orders of the Board are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions. *Id.* § 160(e). Conversely, any "aggrieved" person may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA. *Id.* § 160(f). Only upon enforcement by a court of appeals does a Board order become fully effective against a respondent. *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020). District courts generally lack jurisdiction to review or supervise these cases. *Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 460 (9th Cir. 1994) (noting "the district court's lack of jurisdiction over unfair labor practices").

Amazon engages in the retail sale and distribution of consumer goods from its places of business in Palmdale, California. Battle Tested Strategies, LLC ("BTS") is a

delivery business that, in accordance with an Amazon contract, transported packages from Amazon's facility to Amazon's customers. ECF No. 1-1, at 2-4.

On April 14, 2023, Amazon informed BTS that it was terminating its contract with BTS as of June 24, 2023. On April 20, 2023, BTS voluntarily recognized Teamsters Joint Council 42 ("the Union") as the exclusive collective-bargaining representative for its delivery drivers and dispatchers at its Palmdale facility. BTS subsequently executed a collective-bargaining agreement with the Union. *Id.* at 6-7.

On April 26, 2023, the Union emailed Amazon and requested that Amazon recognize it as the exclusive collective-bargaining representative for BTS's delivery drivers and dispatchers. Amazon has not recognized or bargained with the Union. *Id.* at 7. The Union subsequently filed charges with the NLRB's Region 31 office alleging that, as Amazon is a joint employer with BTS for purposes of collective bargaining, Amazon had violated the NLRA in various ways, including by eliminating a contract to avoid unionization and failing to recognize or bargain with the Union.

On September 30, 2024, the General Counsel issued a Complaint alleging that BTS is an agent of Amazon pursuant to Section 2(13) of the NLRA, 29 U.S.C. § 152, and that Amazon is a joint employer. The Complaint further contains a number of allegations of unlawful conduct, including that Amazon failed to recognize and bargain with the Union regarding essential terms and conditions of employment, terminated its contract with BTS without affording the Union an opportunity to bargain over the effects of that termination, and discriminated against union supporters.[3] ECF No. 1-1, at 1-12.

Amazon filed its Answer to the General Counsel's Complaint on October 15, 2024. On November 5, 2024, Amazon filed its Complaint for Declaratory and Injunctive Relief ("Compl.") with this Court. On November 15, Amazon filed its Notice of Motion and Motion for Preliminary Injunction ("Mot."), seeking to enjoin

---

[3] The administrative docket can be found at https://www.nlrb.gov/case/31-CA-317349.

the NLRB's administrative proceeding. Amazon alleges that the removal protections for NLRB Board members and ALJs are unconstitutional. Compl. ¶¶ 33-41, 50-55; Mot. 4-10.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). A plaintiff must make "a clear showing" that it is "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). To make that showing, a plaintiff must establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). To obtain a preliminary injunction, a plaintiff must satisfy all four prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## ARGUMENT

### A. Congress has jurisdictionally barred injunctive relief in cases involving or growing out of labor disputes.

Absent a statutory exception, Congress has jurisdictionally barred all "court[s] of the United States" from issuing injunctions or TROs "in any case involving or growing out of any labor dispute," 29 U.S.C. § 107, where such injunction would be contrary to the public policy in favor of self-organization, collective bargaining, and concerted activity by employees for mutual aid or protection, *id.* § 102; *see generally id.* § 101 *et seq.* (Norris-LaGuardia Act); *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253 (1970). This case unquestionably "grow[s] out of" a labor dispute, which includes "any controversy . . . concerning the association or *representation* of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of

5

employment." 29 U.S.C. § 113 (emphasis added). That standard is clearly met: the current proceeding stems directly from Amazon's refusal to bargain with employees' chosen representative. As such, that controversy comes within Norris-LaGuardia's definition of "labor dispute." 29 U.S.C. § 113(c). That scope is clear, broad, and admits no non-statutory exception. *See Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 711 (1982); *United Steelworkers v. Bishop*, 598 F.2d 408, 414 (5th Cir. 1979).[4] This is, in other words, the type of dispute Congress intended to be free from the overweening influence of federal injunctions.

Second, even if this case fell within the narrow set of circumstances in which any sort of injunction could ever issue in connection with a labor dispute, Amazon would need to show, not merely ordinary irreparable injury, but "substantial and irreparable injury to complainant's property." *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-cv-02577, 2024 WL 4817175, at *(D.D.C. Nov. 17, 2024) (explaining the series of steps a court would have to take before finding that an injunction could issue in a case involving and growing out of a labor dispute under Norris-La Guardia). As more fully outlined below in Section II(B), Amazon cannot show that any irreparable injury will befall either itself or its "property." By the same token, Norris-LaGuardia's strictures preclude relief where a complainant "has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108. *See BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal Workers—Transp. Div.*, 973 F.3d 326, 342 (5th Cir. 2020) (failure to pursue "administrative avenue" under Railway Labor Act precluded injunction). Amazon's failure to exhaust administrative processes here is fatal to its claims.

---

[4] The Supreme Court's decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), does not affect Norris-LaGuardia's explicit jurisdictional bar, as *Axon*'s reasoning is limited to implicit bars. *See, e.g.*, *Moats v. Nat'l Credit Union Admin. Board*, No. 3:23-cv-147, 2024 WL 1724271, at *2-4 (S.D. Tex. Apr. 9, 2024), *appeal docketed*, No. 24-40259 (5th Cir. Apr. 22, 2024).

**B. Amazon is not likely to succeed on any of its claims.**

    1.  <u>Failure to allege causal harm dooms Amazon's removal claims.</u>

Amazon has made no effort to allege, much less produce evidence, that the statutes restricting the removal of ALJs and Board members actually cause it harm. Supreme Court precedent renders these challenges hopelessly flawed.

In *Collins v. Yellen*, 594 U.S. 220 (2021), the Supreme Court made clear that removal-restriction problems are materially distinct from officer-appointment problems. The Court held that when an official is "properly *appointed*," there is no claim that he "exercise[d]…power that [he] did not lawfully possess," and thus, "there is no reason to regard any of the actions taken…as void." *Id.* at 257-58. The Court explained that a showing of an infirm removal provision, in the abstract, is not enough to void agency action; rather, a plaintiff must show that the removal provision "cause[d] harm" to them, *e.g.*, if "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 259–60.

Consistent with *Collins v. Yellen*, every circuit court to have considered what plaintiffs need to show to obtain relief on removal-protection claims has held that they must show causal harm. *See, e.g.*, *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742–43 (9th Cir. 2022) (at minimum, challenger must show how unconstitutional removal provision actually caused harm); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757–58 (10th Cir. 2024) (declining to enjoin pending administrative proceeding due to lack of causal harm), *petition for cert. filed*, No. 24-156 (Aug. 9, 2024); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023) (challenger must show causal harm to obtain relief); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) (similar), *cert. denied*, 144 S. Ct. 2579 (2024); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*") (similar), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), *reinstating opinion in relevant part*, 104 F.4th 930 (5th Cir. 2024); *Calcutt v. FDIC*, 37 F.4th 293, 318–20 (6th Cir. 2022) (similar), *rev'd per curiam on other grounds*, 598 U.S.

623 (2023). Courts have also repeatedly rejected arguments that *Collins*'s causal-harm standard applies to only retrospective relief. *See, e.g.*, *Leachco*, 103 F.4th at 757 (citing *Crystal Moroney*, 63 F.4th at 180–81; *CFSA*, 51 F.4th at 631; *Calcutt*, 37 F.4th at 316 (explaining that *Collins*'s remedial "inquiry focuses on whether a harm occurred that would create an entitlement to a remedy, rather than the nature of the remedy"); *accord YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-12173, 2024 WL 4119058, at *4–10 (E.D. Mich. Sept. 9, 2024), *motion for injunction pending appeal denied*, No. 24-1754, 2024 WL 4489598, at *3–5 (6th Cir. Oct. 13, 2024) (applying *Collins* causal-harm standard), *application for writ of injunction denied*, No. 24A348, 2024 WL 4508993 (U.S. Oct. 15, 2024) (Kavanaugh, J. in chambers).

Given the high burden this standard creates, it is not surprising that courts faced with this analysis have repeatedly denied injunctions sought on removability grounds. *See, e.g.*, *Leachco*, 103 F.4th at 765 (challenge to CPSC commissioners' and ALJs' removal protections); *Burgess v. FDIC*, 639 F. Supp. 3d 732, 747 (N.D. Tex. 2022) (FDIC Board of Directors and ALJs), *appeal docketed sub nom. Burgess v. Whang*, No. 22-11172 (5th Cir. Dec. 5, 2022). Within the last five weeks, two district judges within this Circuit have denied preliminary injunctions to halt NLRB proceedings on removability grounds because each challenger failed to show causal harm. *See Ares Collective Grp. LLC v. NLRB*, No. CV-24-00517-TUC-SHR, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024) ("merely highlighting" existence of two-layer removal system "does not establish the causal link"); *HonorHealth v. NLRB*, No. CV-24-03009-PHX-DJH, 2024 WL 4769772, at *3-4 (D. Ariz. Nov. 13, 2024) (following *Ares*). The law is thus settled: "a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm." *Collins v. Dep't of Treasury*, 83 F.4th 970, 982 (5th Cir. 2023) (cleaned up).

Amazon has made no effort to meet this standard. This alone suffices to deny its request for preliminary relief. *See Cortes v. NLRB*, No. 1:23-cv-02954, 2024 WL

1555877, at *7 (D.D.C. Apr. 10, 2024) (dismissing similar lawsuit because "the Court could 'dispose of the case' on the harm requirement" (quoting *Bond v. United States*, 572 U.S. 844, 855 (2014))), *appeal docketed*, No. 24-5152 (D.C. Cir. June 10, 2024); *see also Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-cv-445, 2024 WL 4594709, at *4–5 (W.D. Mich. Oct. 25, 2024) (rejecting removal challenge primarily on "threshold matter" of causal harm), *appeal docketed*, No. 24-1975 (6th Cir. Nov. 5, 2024).[5] Accordingly, Amazon's removal claims are fit for dismissal, not the award of an extraordinary remedy.[6]

    2.   <u>Amazon's Board member removal claims are contrary to precedent.</u>

    Amazon alleges that Board members are unconstitutionally insulated from removal by the President. Mot. 4-7. This argument, however, is foreclosed by *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). In that decision, the Supreme Court held that members of the Federal Trade Commission (FTC), who were part of a multi-member decisionmaking body of experts, could be constitutionally insulated from removal by the President. *Id.* at 630-32. The Court reasoned that Congress's grant of tenure protections was constitutional and did not interfere with the President's authority because FTC commissioners performed "quasi-legislative and quasi-judicial functions." *Id.* at 629. Relying on *Humphrey's Executor*, Congress created the NLRB less than two months after that decision and modeled it after the FTC. *See* H.R. Rep. 74-1371, at 4 (1935) (stating that the NLRB "is to have a similar status to that of the Federal Trade Commission" and describing express removal protections for Board members as "desirable in the light of" *Humphrey's Executor*), *reprinted in*, 2

---

[5] Even assuming arguendo that this Court finds removal protections for ALJs and Board members to be unconstitutional, the proper remedy would be severance, not an injunction. *See Space Expl. Techs. Corp. v. Bell*, 701 F. Supp. 3d 626, 635 (S.D. Tex. 2023) (withholding preliminary relief on removability grounds for this reason).

[6] As we address below at pp. 18, *Axon Enterprises, Inc. v. FTC*, 598 U.S. 174 (2023), does not alter this analysis. That decision addressed solely jurisdiction, not entitlement to injunctive relief.

NLRB, Legislative History of the National Labor Relations Act, 1935, at 3255 (1949).

The *Humphrey's* Court identified features like the FTC commissioners' seven-year, staggered terms as evidence of Congress's intent to "create a body of experts who shall gain experience by length of service," which "would not be subject to complete change at any one time." 295 U.S. at 624–25. The core holding of *Humphrey's Executor* therefore recognizes that—at the very least—Congress can insulate members of commissions like the FTC from unencumbered presidential removal. *See Wiener v. United States*, 357 U.S. 349 (1958) (inferring removal protections for members of the War Claims Commission).

No circuit court has ever struck down removal protections for officers serving on a multimember commission. *See Leachco*, 103 F.4th at 760–63 (upholding removal protections identical to those of Board members belonging to the heads of the Consumer Product Safety Commission); *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 352 (5th Cir. 2024) (holding that the *Humphrey's Executor* rationale broadly "protects *any* 'traditional independent agency headed by a multimember board'") (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 207 (2020)), *cert. denied*, No. 23-1323, 2024 WL 4529808 (Oct. 21, 2024). "The organizational features of the NLRB match the profile of an agency that fits within the parameters of the *Humphrey's Executor* removal exception." *Alivio Med. Ctr. v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *7 (N.D. Ill. Sept. 13, 2024).

Amazon contends that because Board members "wield substantial executive power," *Humphrey's Executor* does not apply. Mot. 5-6. This position is tantamount to saying that *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), upended decades of precedent and practice by supplanting *Humphrey's Executor* with a new legal rule that allows principal officers serving on multi-member boards or commissions to receive removal protections only if they do not exercise "substantial executive power." Not so.

First, *Seila Law* expressly disavowed that it was disturbing any of the Court's

10

prior precedents. It did "not revisit . . . prior decisions allowing certain limitations on the President's removal power," *id.* at 204, or "revisit *Humphrey's Executor* or any other precedent today," *id.* at 228; *see also FTC v. Grand Canyon Educ., Inc.*, --- F. Supp. 3d ----, No. CV-23-02711-PHX-DWL, 2024 WL 3825087 (D. Ariz. Aug. 15, 2024) (rejecting similar effort to cast *Seila Law* as a gamechanger).

Second, *Seila Law* suggested that one possible cure to the constitutional problem created by the CFPB's tenure-protected, single-director structure was converting the CFPB to a multimember agency. *Seila Law*, 591 U.S. at 237. That makes perfect sense if *Humphrey's Executor* remains binding. But it makes no sense on Amazon's view, because the CFPB undoubtedly "wields significant executive power." *Seila Law*, 591 U.S. at 205-207 (cataloguing authorities).

Simply put, as the Fifth Circuit broadly held in *Consumers' Research*, *Humphrey's Executor* "still protects *any* 'traditional independent agency headed by a multimember board.'" 91 F. 4th at 352 (quoting *Seila Law*, 591 U.S. at 207) (emphasis added). Notably, the *Consumers' Research* court found that the Consumer Product Safety Commission (CPSC) "exercises substantial executive power (in the modern sense)," *id.* at 353-45, and listed relevant examples of such power, *id.* at 346 (cataloguing authorities). Nonetheless, the Fifth Circuit found that those powers did not affect the validity of the CSPC commissioners' removal protections.[7] It recognized that applying

---

[7] In comparison, the Board's authority is significantly less robust. Although the Board also has rulemaking authority, it cannot initiate administrative proceedings, seek civil monetary penalties, or provide any other form of nonremedial relief. 29 U.S.C. § 160(a), (c). In addition, the Board's orders are not self-enforcing. *Dish Network*, 953 F.3d at 375 n.2. As such, the justification for upholding the removal protections at issue here is at least as strong as it was in *Consumers' Research*. And to the extent Amazon relies on the Board's circumscribed role in exercising "prosecutorial" powers by authorizing the General Counsel from time to time to seek temporary injunctive relief in district court under Section 10(j) of the Act, 29 U.S.C. § 160(j), [Mot. 5], that argument is foreclosed by controlling precedent. *See FTC v. Am. Nat'l Cellular, Inc.*, 810 F.2d 1511, 1513-14 (9th Cir. 1987) (rejecting argument that FTC's ability to seek

a "substantial executive power" standard—identical to the one Amazon presses here—would effectively overrule *Humphrey's Executor*, which lower federal courts simply cannot do. 91 F.4th at 353–55.

Amazon feebly tries to distinguish *Humphrey's Executor* on the basis that the NLRA omits "inefficiency" as a ground for removing Board members. Mot. 6-7. But the Fifth Circuit recently upheld identical removal protections in *Consumers' Research*, 91 F.4th at 346, 352 (reviewing statutory language and remarking that CPSC and FTC "are twins" because commissioners of both agencies can be removed only for cause), as did the Tenth Circuit in *Leachco*, 103 F.4th at 761, 763. As the Eastern District of Michigan recently noted, legal scholars have explained that "the absence of 'inefficiency' as a ground for removal does not unconstitutionally interfere with the President's authority." *YAPP*, 2024 WL 4119058, at *6 n.4 (citing Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 8, 69 (2021)).

### 3. NLRB ALJs' removal protections are constitutional under binding and persuasive precedent

Respondent has not shown the necessary harm traceable to ALJs' removal protections. But it would lose even if it could do so, because under controlling precedent, ALJs are not the type of inferior officers of the United States with policymaking or prosecutorial responsibilities that must be removable at the will of their appointing authorities in order to protect Presidential authority under Article II.

The Supreme Court has long held that subordinate officials within the Executive Branch, a category which includes "inferior officers" like ALJs, *see Seila*, 591

---

injunctive relief—which it gained after *Humphrey's Executor* was decided—meant that *Humphrey's Executor* was not controlling). Amazon's assertion [Mot. 5] that the Board wields significant executive power through its ability to issue subpoenas meets a similar roadblock; the FTC enjoys the same power. *See* 15 U.S.C. § 49.

U.S. at 207, can be afforded a measure of protection from removal without unconstitutionally impairing the President's powers under Article II of the Constitution. Like all ALJs, NLRB ALJs are afforded a measure of decisional independence through a statutory provision that allows ALJs across the Executive Branch to be removed from office only upon a showing of "good cause." 5 U.S.C. § 7521(a). The "good cause" removal protection that Congress has afforded to ALJs, including the one who will be assigned to Amazon's unfair-labor-practice case, is consistent with the precedents discussed below.

In *United States v. Perkins*, 116 U.S. 483 (1886), a Naval inferior officer challenged his for-cause removal as unlawful, as Congress had provided that such inferior officers could be removed in peacetime only pursuant to a court-martial sentence. *Id.* at 483-84. The Supreme Court agreed, holding that it "ha[d] no doubt" that Congress "may limit and restrict the power of removal" for inferior officers. *Id.* And in *Morrison v. Olson*, 487 U.S. 654 (1988), the Court upheld a "good cause" removal restriction for an independent counsel appointed to investigate and prosecute serious crimes committed by certain high-ranking executive officers. *Id.* at 685-93. Through that removal authority, the Court stated, the President "retains ample authority to assure that the counsel is competently performing his or her statutory responsibilities." *Id.* Although the independent counsel exercised "discretion and judgment" in carrying out his responsibilities, the Court concluded that "the President's need to control the exercise of that discretion [was not] so central to the functioning of the Executive Branch as to require as a matter of constitutional law that the counsel be terminable at will by the President." *Id.* at 691-92.

Congress does not have unlimited authority to shield officials wielding executive power from removal. It cannot impose any restriction that prevents the President from ensuring that the laws are faithfully executed or "deprive[s] the President of adequate control" over the official's exercise of executive power. *Free Enter. Fund*, 561 U.S. at 508; *see also Morrison*, 487 U.S. at 658. But within those bounds,

13

Congress may regulate the conditions for removal of inferior officers.

Here, the statute affording ALJs a measure of removal protection satisfies constitutional requirements. Congress created ALJs as "semi-independent subordinate hearing officers" within agencies. *Ramspeck v. Fed. Trial Exam'rs Conf.*, 345 U.S. 128, 132 (1953) (cleaned up). Simultaneously, Congress sought to ensure that "agenc[ies] retain[] full power over policy." 2 Paul R. Verkuil et al., Administrative Conference of the United States, Recommendations and Reports: *The Federal Administrative Judiciary* 803 (1992). The Administrative Procedure Act accordingly gives agencies plenary power to reverse ALJs' decisions. *See* 5 U.S.C. § 557(b). And under Section 7521(a)'s "good cause" standard, an ALJ can be removed for refusing to follow binding legal or policy judgments announced by the Board.

Consistent with that design, the regulations governing NLRB adjudications assure that the five-seat Board is ultimately responsible for setting policy. The ALJ conducts an administrative hearing, *see* 29 C.F.R. §§ 102.34-.35, and issues a decision containing factual and legal determinations regarding whether a violation has occurred, as well as a recommended order, *id.* § 102.45(a). But, crucially, the ALJ's order is not a final agency order until the Board has had an opportunity to hear and resolve any party's exceptions to the ALJ's "decision or to any other part of the record or proceedings (including rulings upon all motions or objections)." *Id.* § 102.46(a); *see id.* § 102.48. And even if no exceptions are filed, the Board may nonetheless modify the judge's recommended order to conform to the Board's current remedial practices. *See, e.g., Cooling for Less*, 2014 WL 1871305, at *1 n.1. Even an ALJ's interlocutory orders can be immediately reviewed by the Board. *See id.* § 102.26. Finally, as ALJ decisions are not precedential, there is no risk that an ALJ will set policy even if the parties decline to seek Board review. *NY Paving, Inc.*, 2022 WL 4546315, at *6 n.11.

This design comports with constitutional requirements, as several courts of appeals have confirmed. *See Decker Coal v. Pehringer*, 8 F.4th 1123, 1129–36 (9th Cir. 2021)

14

(holding that Congress could grant tenure protections to Department of Labor (DOL) ALJs); *Calcutt*, 37 F.4th at 319–20 (Federal Deposit Insurance Corporation ALJs); *Leachco*, 103 F.4th at 764 (Consumer Product Safety Commission ALJs). The only Circuit to hold otherwise is the Fifth Circuit, in *Jarkesy v. SEC.* 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other grounds*, 144 S. Ct. 2117 (2024).

Amazon's challenge to NLRB ALJs' removal protections hinges on whether it can establish that removal protections for NLRB ALJs "deprive[s] the President of adequate control" over the official's exercise of executive power. *Free Enter. Fund*, 561 U.S. at 508. In support, Amazon points to *Free Enterprise Fund*, a cramped reading of *Decker Coal*, and a handful of out-of-circuit, non-binding decisions, Mot. 7-9. These do not remotely suffice to show that longstanding protections for ALJs against arbitrary removal are unconstitutional.

Turning first to *Free Enterprise*, Amazon claims that, as the two-layer removal protections afforded to the Public Company Accounting Oversight Board ("PCAOB") in *Free Enterprise* were unconstitutional, so too must be the two-layer removal protections for NLRB ALJs. Mot. 8. But Amazon is wrong in critical respects. As the Ninth Circuit recognized in *Decker Coal*, *Free Enterprise* "did not broadly declare all two-level for-cause protections for inferior officers unconstitutional." 8 F.4th at 1132. Rather, *Free Enterprise* held unconstitutional the "highly unusual" and "sharply circumscribed" dual-layer removal protections of the leadership of a regulatory body with policymaking and enforcement powers, 561 U.S. at 505, while expressly noting that its holding "does not address" ALJs. *Id.* at 507 n.10. But this does not mean that *Free Enterprise* did not provide guidance as to the essential differences between ALJs and PCAOB. As the Supreme Court noted, "unlike members of the [PCAOB], many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions or possess purely recommendatory powers." 561 U.S. at 507 n.10 (internal citation omitted).

Amazon weakly tries to distinguish *Decker Coal* on the basis that the NLRB is

an independent, rather than executive, agency. Mot. 9-10. But two factors that the *Decker Coal* court pointed to—that DOL ALJs exercise "purely adjudicatory functions" and are not subject to "unusually high" removal restrictions that posed "an even more serious threat to executive control" in *Free Enterprise*, 561 U.S. at 477, 503—are identical to the facts of the instant case. NLRB ALJs, like DOL ALJs, do not exercise "policy making and enforcement functions." 8 F.4th at 1133. *Decker Coal* also noted that DOL ALJs "cannot sua sponte initiate investigations or commence a . . . case," and that Congress did not "mandate[] that the DOL employ ALJs in adjudicating" administrative cases. 8 F.4th at 1133. The same reasoning applies to NLRB ALJs. *See* 29 U.S.C. §§ 153(d), 160(b). And NLRB ALJs, like DOL ALJs, are protected by the same "ordinary 'good cause' standard," *Decker Coal*, 8 F.4th at 1135, established by 5 U.S.C. § 7521(a). It is for these reasons that the Tenth Circuit, applying *Decker Coal* as persuasive authority, upheld the constitutionality of two-layer removal protections for Consumer Product Safety Commission ("CPSC") ALJs because, in addition to only possessing adjudicatory authority and ordinary good-cause protections, the CPSC could forego use of CPSC ALJs entirely. *See Leachco*, 103 F.4th at 764; *see also Calcutt*, 37 F.4th at 320 (explaining that the permissibility of ALJs' removal protections "centers on their status as adjudicatory officials that issue non-final recommendations to an agency, and not on how many levels of removal protections they enjoy").[8] The Board can also forego the use of ALJs entirely. *See* 29 U.S.C. § 160(b) (permitting the Board, a member of the Board, or an agent of the Board to hear cases).

Amazon's reliance on *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd on other*

---

[8] This is also the conclusion reached by several federal district courts outside the Fifth Circuit that have reviewed NLRB ALJ removal protections. *See YAPP*, 2024 WL 4119058, at *8 ("NLRB ALJs perform purely adjudicatory functions, issue non-final recommendations to the NLRB, and enjoy good-cause protections that are a 'lesser impingement' than . . . in *Free Enterprise Fund*."); *Alivio Med. Ctr. v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *11 (N.D. Ill. Sept. 13, 2024) (following *YAPP*).

*grounds*, 144 S. Ct. 2117 (2024), and two district court opinions from within the Fifth Circuit that followed *Jarkesy*, is misplaced. Mot. 8-9. Those non-binding, out-of-circuit decisions are contrary to *Decker Coal*, which, as noted above, upheld the very same removal restrictions applied to a similar context. 8 F.4th at 1130, 1136; *see also Jarkesy*, 34 F.4th at 478 (Davis, J., dissenting) ("The majority's decision [on the constitutionality of ALJ removal protections] is in tension, if not direct conflict, with *Decker Coal*."). And they are unpersuasive on their own merits; they do not explain *why* the President needs to be able to remove adjudicative factfinders who have no policymaking functions, and indeed neither can Amazon.

NLRB ALJ removal protections cannot be said to "impede the President's ability to perform his constitutional duty." *Morrison*, 487 U.S. at 691. NLRB ALJs do not prosecute cases, the Board may forego use of ALJs entirely or review any element of an NLRB ALJ decision or remedy, and ALJs whom the President wishes to remove are subject to "an ordinary 'good cause' standard," *Decker Coal*, 8 F.4th at 1135. Amazon's argument fails utterly. For these reasons, Congress has constitutionally provided a modicum of protection to NLRB ALJs. This is also the conclusion reached by several federal district courts outside the Fifth Circuit that have reviewed NLRB ALJ removal protections. See *YAPP*, 2024 WL 4119058, at *8 ("In sum, NLRB ALJs perform purely adjudicatory functions, issue non-final recommendations to the NLRB, and enjoy good-cause protections that are a 'lesser impingement' than the removal standard at issue in *Free Enterprise Fund*"); *Alivio Med. Ctr. v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *11 (N.D. Ill. Sept. 13, 2024) (following *YAPP*).

**C. Amazon has not met its burden to show irreparable harm.**

The Supreme Court has repeatedly stated that the "basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). Amazon has failed to establish that it is "likely to suffer imminent, irreparable harm absent an injunction." *Bennett v. Isagenix*

*Int'l LLC*, 118 F.4th 1120, 1126 (9th Cir. 2024).

Amazon primarily bases its claim of irreparable harm on the notion that *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), makes such proof unnecessary. Mot. 11-12. But *Axon* did not address injunctive relief and does not bear on the question of irreparable harm. Rather, the narrow question decided in *Axon* was whether a district court had jurisdiction to hear structural constitutional challenges to ongoing agency proceedings. *See Leachco*, 103 F.4th at 759 ("[W]e will not misunderstand what was said about jurisdiction in *Axon* 'as a holding on a party's entitlement to relief based on an unconstitutional removal provision.'") (quoting *Collins*, 594 U.S. at 258 n.24); *Alpine Sec. Corp. v. FINRA*, --- F. 4th ---, 2024 WL 4863140, at *15–16 (D.C. Cir. Nov. 22, 2024) ("*Axon* answered a statutory jurisdictional question . . . . [T]he Court did not speak to what constitutes irreparable harm for . . . a preliminary injunction."); *accord YAPP*, 2024 WL 4489598, at *3 (*Axon* Court "did not address the merits of [the removal protection] claims, but rather assessed whether federal courts have *jurisdiction* to hear the claims on their merits") (cleaned up).

Amazon also cannot establish irreparable harm based solely on the fact that its claims are constitutional in nature. *Contra* Mot. 11. To the extent that any such presumption exists in the Ninth Circuit, Amazon would first have to show that it is likely to succeed on the merits of its constitutional claims, which it has not. *See Baird v. Bonta*, 81 F.4th 1036, 1046-48 (9th Cir. 2023) (courts "need not consider the other factors if a movant fails to show a likelihood of success on the merits") (cleaned up). Additionally, other courts have been hesitant to apply any such presumption broadly, and have often limited it to constitutional claims involving First Amendment and personal privacy rights, not the more abstract injuries Amazon alleges here.[9] *See Siegel*

---

[9] Plaintiffs' cited authorities are not to the contrary. Mot. 11-12. *Nelson v. National Aeronautics & Space Administration*, 530 F.3d 865, 877-81 (9th Cir. 2008), involved a challenge based on government contractors' right to informational privacy. That case, in turn, relied on a decision concerning an alleged Equal Protection Clause violation.

*v. Lepore*, 234 F.3d 1163, 1178 (11th Cir. 2000) ("The only areas of constitutional jurisprudence where . . . an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims [.]"); *Pub. Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987) (findings of irreparable harm based solely on a constitutional violation "are almost entirely restricted to cases involved alleged infringement of free speech, association, privacy or other [similar] rights"). Indeed, any presumption of harm in constitutional cases should be narrow to ensure that each of the four preliminary-injunction factors be given effect. *See Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024). To say that irreparable harm "usually" exists where a constitutional plaintiff is likely to succeed, *Baird*, 81 F.4th at 1040, does not relieve plaintiffs of their burden to show that their case is indeed "usual"—and Amazon does not even attempt to do so here.

### D. The public interest and the balance of the equities disfavor an injunction.

Amazon also cannot show that its alleged harm outweighs the harm an injunction would inflict on the public and those not before the Court. "[G]reat weight" should be given to "the fact that Congress already declared the public's interest and created a regulatory and enforcement framework." *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 760 (8th Cir. 2003). Through the NLRA, Congress empowered the NLRB to initially adjudicate and, where appropriate, remedy unfair labor practices to "safeguard[] commerce from injury." 29 U.S.C. § 151; *see UAW Loc. 283 v. Scofield*, 382 U.S. 205, 220 (1965). The effects of an injunction would be especially severe here since the NLRB's administrative

---

*Id.* at 882 (citing *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997)). Similarly, the plaintiff in *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019), alleged a First Amendment and state law free speech violation. None of these cases implicates a broad-based injury similar to the one Amazon alleges here, which would be suffered by every respondent to an NLRB unfair-labor-practice proceeding.

procedures are the sole mechanism for enforcing the rights the NLRA creates, *Nathanson v. NLRB*, 344 U.S. 25, 27 (1953). Depriving Amazon's employees—the victims of the alleged ULPs—of their only avenue to vindicate their NLRA rights cannot serve the public interest, especially where Plaintiff may obtain an adequate remedy in a court of appeals if the Board ultimately issues an adverse decision. *See, e.g., Ares*, 2024 WL 4581436, at *2 ("Even assuming the two-layer removal system could cause a per se harm to Plaintiffs, this harm can be completely extinguished by the court of appeals vacating an ALJ's decision.").

Additionally, granting Amazon's Motion for Preliminary Injunction would necessarily delay, if not outright preclude, resolution of the underlying ULPs in this case. A delay would be particularly damaging here, where the ULP complaint alleges Amazon has failed to recognize and bargain with the Union. Courts have long recognized that delays in initial contract bargaining cause irreparable harm to employees and the certified union. *E.g.*, *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 49–50 (1987) (employer's refusal to bargain "disrupts the employees' morale, deters their organizational activities, and discourages membership in unions.") (quotation omitted); *cf. Small v. Avanti Health Sys.*, LLC, 661 F.3d 1180, 1192 (9th Cir. 2011) ("a delay in bargaining weakens support for the union, and a Board order cannot remedy this diminished level of support."). So, while Amazon stands to benefit from having the enforcement of the NLRA halted, the hidden costs it shifts onto others should not be lightly case aside.  As the Northern District of Illinois recently put it, Amazon's "position—if accepted—would neuter the [NLRA] by blocking all proceedings before the [NLRB], the independent agency that has steadfastly and exclusively enforced the statute for the past eighty-nine years against entities accused of unfair labor practices. Quite extraordinary, indeed." *Alivio*, 2024 WL 4188068, at *11. Extraordinary—and totally unjustified.

## **CONCLUSION**

This Court should deny Amazon's request for injunctive relief.

Respectfully submitted,

NATIONAL LABOR RELATIONS
BOARD
*Contempt, Compliance, and*
 *Special Litigation Branch*

NATIONAL LABOR RELATIONS
BOARD
*Region 31*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

LYNN TA
*Field Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

JAMES KIRWAN
*Trial Attorney*

/s/ Paul A. Thomas
PAUL A. THOMAS
*Supervisory Attorney*
CA Bar No. 280445
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-3788
Paul.thomas@nlrb.gov

Attorneys for Defendants

Dated Nov. 27, 2024

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

AMAZON.COM SERVICES LLC and
AMAZON LOGISTICS, INC.,

                    Plaintiffs,

          v.                                    Case No. 2:24-cv-09564-SPG-MAA

NATIONAL LABOR RELATIONS
BOARD, *et al.*,

                    Defendants.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the above document complies with the type-volume limitation of L.R. 11-6.1, as it contains 6,988 words excluding those exempted by that rule, and L.R. 11-3.1.1, as it was prepared by Microsoft Word for Office 365 in proportionally-spaced, 14-point Garamond font.

                                                /s/ Paul A. Thomas
                                                Paul A. Thomas