# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON.COM SERVICES LLC and AMAZON LOGISTICS, INC., | Case No. 2:24-cv-09564-SPG-MAA |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 15]** |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, et al., | |
| Defendants, | |
| and | |
| TEAMSTERS AMAZON NATIONAL NEGOTIATING COMMITTEE, | |
| Intervenor. | |

Before the Court is the Motion for Preliminary Injunction (ECF No. 15 ("Motion")) filed by Plaintiffs Amazon.com Services LLC and Amazon Logistics, Inc. (collectively, "Plaintiffs" or "Amazon"). Defendants National Labor Relations Board ("NLRB"), four members of its board, its General Counsel, and an Administrative Law Judge ("ALJ") named as "J. Doe," all of whom are sued in their official capacities, (collectively, "Defendants") timely opposed (ECF No. 31 ("NLRB Opp.")), and Intervenor Teamsters Amazon National Negotiating Committee ("TANNC" or the "Union") also opposed (ECF

-1-

No. 32-4 ("TANNC Opp.")).[1]  Plaintiffs have replied to both oppositions (ECF Nos. 38 ("Reply to NLRB") and 44 ("Reply to TANNC")).  Having considered the parties' submissions, oral arguments, the relevant law, and the record in this case, the Court denies the Motion.

## I.    BACKGROUND

Plaintiffs filed this present suit against Defendants, asserting that Plaintiffs are being subjected to an administrative action brought by the NLRB, whose structure allegedly violates the United States Constitution.  *See generally* (ECF No. 1 ("Compl.")).  The underlying NLRB action stems from unfair labor practice charges filed by TANNC with the NLRB.  (TANNC Opp. at 14).  Upon receipt of the charges and an investigation thereof, NLRB's General Counsel issued an administrative complaint, alleging that Plaintiffs engaged in unfair labor practices and therefore violated the National Labor Relations Act ("NLRA").  *See generally* (ECF No. 1-1).  All parties in this present suit seem to dispute many facts leading up to the administrative action.  The Court summarizes the factual allegations below.

Battle Tested Strategies, LLC ("BTS"), a delivery service company, and Plaintiff Amazon Logistics executed a contract, in which BTS agreed to deliver packages out of Amazon's DAX8 facility in Palmdale, California.  (Mot. at 9).  On April 14, 2023, Plaintiff Amazon Logistics notified BTS that it was terminating the contract as of June 24, 2023.  (NLRB Opp. at 11); *see also* (Mot. at 10).  BTS workers designated Teamsters Joint Council 42 and Teamsters Local 396 as their bargaining representatives.[2]  (TANNC Opp. at 12, n.5).  Among other things, the workers challenged, as TANNC described, the

[1] On December 2, 2024, the Court, finding good cause, granted TANNC's unopposed Ex Parte Application for leave to intervene and file an opposition to Plaintiffs' present Motion. *See* (ECF 34).

[2] For brevity, the Court refers to the BTS delivery drivers and dispatchers as "workers" but takes no position on whether they were legally considered employees or independent contractors for Amazon. *See* (Mot. at 10) (contesting that their companies never employed BTS's workers).  The merits of this employee classification are immaterial for purposes of this instant Motion. *See infra* note 3.

"grueling and dangerous working conditions imposed by Amazon and BTS . . . ." (*Id.* at 13). On April 26, 2023, the Union requested that Plaintiffs recognize it as the exclusive collective-bargaining representative for BTS's workers. (NLRB Opp. at 11). Plaintiffs refused to do so. *See* (TANNC Opp. at 13–14); (Mot. at 10). Further, according to the TANNC, Plaintiffs attempted to prevent unionization. (TANNC Opp. at 13).

TANNC then filed charges with the NLRB's Region 31 office, alleging that Plaintiffs engaged in unfair labor practices. (*Id.* at 14); (NLRB Opp. at 11). On September 30, 2024, the NLRB's General Counsel issued an administrative complaint along with a notice of hearing against Plaintiffs for allegedly failing to recognize and bargain with the Union about "essential terms and conditions of employment," terminating the contract with BTS "without affording the Union an opportunity to bargain over the effects of that termination," and discriminating against the Union's supporters. (NLRB Opp. at 11). The administrative hearing is set to take place on March 25, 2025, before a NLRB ALJ.

## II.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). A movant seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits of its claim; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) a preliminary injunction is in the public interest. *Id.* at 20. The first *Winter* factor, likelihood of success on the merits, is a "threshold inquiry and is the most important factor in any motion for a preliminary injunction." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (internal quotation marks and citation omitted); *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). The importance of this factor "holds especially true for cases where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation." *Baird*, 81 F.4th at 1042. If the government is the non-moving party, the last two factors—the balance of equities and public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Additionally, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted).

## III. DISCUSSION

As relevant to this present matter, the NLRA confers for-cause removal protection to NLRB Board Members, whom the President may remove "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). As to the agency's ALJs, the NLRB may remove them "for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). MSPB officers, in turn, may be removed by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

With this statutory framework in mind, Plaintiffs ask that the Court enjoin the NRLB's underlying administrative proceeding, asserting that the statutory removal protections unconstitutionally insulate both the NLRB Board Members and the ALJs from presidential oversight, thereby violating Article II of the United States Constitution. According to Plaintiffs, being subjected to an administrative proceeding by an unconstitutionally structured agency, within itself, presents an irreparable harm that warrants a preliminary injunction. Defendants, on the other hand, argue that the Norris-LaGuardia Act (the "Act" or "NLGA") jurisdictionally bars this Court from granting Plaintiffs' requested relief in this instant Motion—a preliminary injunction to halt the underlying NLRB action and hearing, which is scheduled to take place on March 25, 2025. Notwithstanding the NLGA's jurisdictional bar on this relief, Defendants and TANNC contend that Plaintiffs' participation in the NLRB proceeding, alone, does not reflect a

likelihood of irreparable harm.  For the reasons discussed below, Plaintiffs' extraordinary request to prohibit "Defendants and their employees and agents from taking any action to advance the proceedings," (ECF No. 15-1 ("Proposed Order") at 2), is denied.

### A.    Jurisdiction Under the Norris La-Guardia Act

Absent a statutory exception, the NLGA jurisdictionally divests federal courts of the power to issue an injunction for matters stemming from labor disputes.  The Act declares that "[n]o court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute . . . ."  29 U.S.C. § 107.  Section 113 of the statute, in turn, elaborates that "labor dispute includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."  *Id.* § 113(c) (internal quotation marks omitted).  Supreme Court precedent counsels that "the term 'labor dispute' must not be narrowly construed because the statutory definition itself is extremely broad . . . ."  *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712 (1982); *see also Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1342 (9th Cir. 1990) (emphasizing that the definition of "labor dispute" in the NLGA "is extraordinarily broad, and the Supreme Court has so interpreted it").  Indeed, this statutory language, the Supreme Court explained, "is broad because *Congress was intent upon taking the federal courts out of the labor injunction business* except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act."  *Jacksonville Bulk Terminals*, 457 U.S. at 712 (emphasis in original) (quoting *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 (1960)).  To determine whether the Act governs here, the "critical element" considers if "the employer-employee relationship [is] the matrix of the controversy."  *Id.* at 712 (alteration in original) (internal quotation marks omitted) (quoting *Columbia River Packers Assn., Inc. v. Hinton*, 315 U.S. 143, 147 (1942)).

-5-

The Court concludes that the Act jurisdictionally bars an injunction here. This present suit "grow[s] out of a labor dispute . . . ." 29 U.S.C. § 107. The underlying NLRB proceeding, which Plaintiffs now seek to enjoin, derives from the Union's unfair labor charges filed with the NLRB's Region 31 office. (NLRB Opp. at 11). Specifically, the charges allege that as "a joint employer with BTS for purposes of collective bargaining," Amazon "violated the NLRA . . . by eliminating a contract to avoid unionization and failing to recognize or bargain with the Union." (*Id.*). Thereafter, the NLRB's General Counsel issued an administrative complaint, alleging that "Amazon failed to recognize and bargain with the Union regarding essential terms and conditions of employment, terminated its contract with BTS without affording the Union an opportunity to bargain over the effects of that termination, and discriminated against union supporters." (*Id.*).[3] Plaintiffs, citing

---

[3] During the hearing on the Motion, Plaintiffs seemed to further suggest that the NLGA is inapplicable because the BTS workers, in Plaintiffs' view, should not be classified as employees for Amazon. Whether the BTS workers warrant "employee" status is a consequential issue that the parties are currently litigating in the underlying NLRB action, and, therefore, the merits of such issue remain within the purview of the ongoing action. As such, the Court declines Plaintiffs' invitation to interfere with the ongoing agency action by impermissibly determining the merits of that issue. Plus, in any event, Plaintiffs' attempt to evade the NLGA contravenes well-settled precedent that counsels against their narrow application of the NLGA. As an example, the Supreme Court in *New Negro Alliance* concluded that the NLGA barred injunctive relief where the underlying controversy involved the New Negro Alliance ("NNA") picketing a grocery store to compel hiring Black Americans. *See New Negro Alliance v. Sanitary Grocery Co.*, 303 U.S. 552, 559 (1938). Though the NNA "was not a labor union, it did not seek to represent any employees, and its members did not work for the grocery store," *Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Loc. 174*, 203 F.3d 703, 710 (9th Cir. 2000), the underlying controversy involved an employer's terms and operation of employment. *See New Negro Alliance*, 303 U.S. at 561–62. Indeed, the Act, the Supreme Court reasoned, "embrace[s] controversies other than those between employers and employees; between labor unions seeking to represent employees and employers; and between persons seeking employment and employers." *Id.* at 560–61. Here, the underlying controversy clearly involves BTS workers' employment terms and conditions, thereby leading the Union to file the unfair labor charges against Plaintiffs. NLGA, therefore, governs this controversy. To conclude otherwise would require departure from long-standing precedent.

-6-

to *Columbia River Packers Ass'n*, insists that the NLGA does not extend to the present suit because the controversy "does not center on the employer-employee relationship . . . ." (Reply to NLRB at 9); *see also* 315 U.S. at 147. This lawsuit, Plaintiffs maintain, centers on the constitutionality of for-cause removal protections for NLRB Board Members and ALJs.

A close read of *Columbia River Packers Ass'n*, however, does not support Plaintiffs' contention to overcome NLGA's injunctive bar. The issue in *Columbia River Packers Ass'n* involved a "dispute among businessmen over the terms" of a union agreement that not only forbade buyers from purchasing fish from the union's non-members but also prevented its members from delivering fish to buyers outside of the agreement. 315 U.S. at 145. When one buyer refused to assent to such terms, the union prohibited its members from selling fish to the buyer. Accordingly, the underlying controversy, the Supreme Court concluded, "is altogether between fish sellers and fish buyers," *id.* at 147, and "the sale of commodities," *id.* at 145; *see also Jacksonville Bulk Terminals*, 457 U.S. at 713, n.13 ("In *Columbia River Packers Ass'n*, the Court found that the union was merely an association of independent fish sellers involved in a controversy with fish buyers over a contract for the sale of fish; they were not employees of the buyers, nor did they seek to be.") (citing 315 U.S. at 147). Hence, the NLGA and its jurisdictional bar on injunctive relief remained inapplicable, as the controversy did not arise out of the union members' employment terms and conditions.

The same reasoning does not apply to this present matter. Although Plaintiffs assert constitutional challenges to the NLRB's authority, their claims nonetheless grow out of the current labor dispute with the Union, whose allegations spurred the current NLRB action against Plaintiffs. The district court's recent ruling in *VHS Acquisition Subsidiary No. 7 v. NLRB* on this issue is instructive here. *See* No. 1:24-CV-02577 (TNM), 2024 WL 4817175 (D.D.C. Nov. 17, 2024), *appeal dismissed sub nom. VHS Acquisition Subsidiary No. 7, Inc. v. NLRB*, No. 24-5270, 2024 WL 5232662 (D.C. Cir. Dec. 26, 2024). There, the plaintiff sought to enjoin an NLRB proceeding premised on the same unconstitutional removal

challenges raised in this present Motion.  The court reasoned that, notwithstanding the constitutional claims being "attenuated from the underlying labor charges," the broad language of the NLGA encompassed such claims because the claims "would not exist but for the underlying [Board charges]."  *Id.* at *5 (alteration in original) (internal quotation marks omitted) (quoting *Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 680 (6th Cir. 2002)); *see also id.* ("Something 'grow[s] out' of something else when it arises or results from it.") (citing Webster's New Int'l Dictionary 1108 (William Allan Neilson et al. eds., 1941)).  Likewise, the underlying NLRB action in this case involves a labor dispute that places "in controversy . . . terms and conditions of employment of these employees." *Columbia River Packers Ass'n*, 315 U.S. at 147.  Accordingly, the NLGA jurisdictionally bars enjoining the NLRB proceedings.[4]

To be clear, the NLGA does not strip this Court of federal question jurisdiction to hear Plaintiffs' removal challenges.  In other words, the NLGA does not prohibit federal courts from exercising jurisdiction and reviewing the underlying merits of Plaintiffs' constitutional claims.  The Act only precludes "jurisdiction to *issue a temporary or permanent injunction . . . .*"  29 U.S.C. § 107 (emphasis added).  Federal courts, nonetheless, have jurisdiction, under 28 U.S.C. § 1331, to determine whether the statutory removal protections encroach upon the President's executive power, thereby violating Article II of the Constitution.  Indeed, the Supreme Court recently considered whether district courts have "jurisdiction to hear" unconstitutional removal challenges when a respondent in an administrative action foregoes the "ordinary statutory review scheme" and seeks to vindicate such claims in federal district courts.  *Axon Enter., Inc. v. Fed. Trade*

---

[4] Nor does this instant Motion satisfy the exceptions established in the NLGA.  *See* 29 U.S.C. § 107(b) (establishing that as an exception, a party seeking to enjoin a labor dispute proceeding must demonstrate among other things, "substantial and irreparable injury to complainant's property").  The Court will discuss this issue in greater detail below. *See infra* Section III(B).

*Comm'n*, 598 U.S. 175, 180 (2023).[5]   The Supreme Court answered in the affirmative, ultimately concluding that such claims "are not of the type the statutory review schemes reach." *Id.* at 196 (internal quotation marks omitted).  This distinction, however, between the Court's jurisdiction to *hear* Plaintiffs' claims and jurisdiction to *enjoin* the NLRB action is crucial, and Plaintiffs seem to conflate the two. *See generally infra* Section III(B).

For example, Plaintiffs contend in their Reply to Defendants' Opposition that: "Defendants erroneously argue that the Norris-LaGuardia Act jurisdictionally bars relief. However, *Axon* . . . confirms that district courts have jurisdiction to hear constitutional challenges to agency structures."  (Reply to NLRB at 8) (internal citation omitted). Similarly, in their Reply to TANNC's Opposition, Plaintiffs contend that TANNC cannot argue under the NLGA, the Court "lacks jurisdiction to issue an injunction" because in part, the TANNC "admits that 'no one contests that this Court has subject matter jurisdiction over Amazon's removal-protection claims.'" (Reply to TANNC at 4) (cleaned up) (quoting TANNC Opp. at 23).  That this Court has the jurisdictional authority to hear this constitutional challenge does not invoke this Court's authority to grant Plaintiffs' extraordinary remedy of an injunction.  Nor does the Court's jurisdiction to hear this claim defeat or preclude the NLGA's jurisdictional bar on granting injunctive relief, absent a

---

[5] As a general matter, some federal statutes provide that an aggrieved party in an administrative action may appeal an ALJ's ruling, which, in turn, the agency's multi-member commission or board reviews to render a final decision.  Upon that final agency decision, the party may then appeal and seek judicial review in a circuit court of appeals, instead of a district court.  In essence, the "agency effectively fills in for the district court, with the court of appeals providing judicial review" of the underlying agency decision. *Axon*, 598 U.S. at 185.  This "special statutory review scheme," the Supreme Court noted, "may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Id.*  (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)). *Axon* confirms, however, that this Court may properly exercise jurisdiction to hear Plaintiffs' unconstitutional removal claims, notwithstanding that the NLRB proceeding remains ongoing, and Plaintiffs have not, of course, appealed in a circuit court.

statutory exception.[6]  *See Biden v. Texas*, 597 U.S. 785, 801 (2022) ("And the question whether a court has jurisdiction to grant a particular remedy is *different* from the question whether it has subject matter jurisdiction over a particular class of claims.") (emphasis added).[7]  In sum, the NLGA's jurisdictional bar, alone, forecloses Plaintiffs' requested relief to interfere and halt the NLRB proceeding.

### B.    Causal Harm and Irreparable Injury

The NLGA carves out limited exceptions to its jurisdictional bar on injunctive relief—namely, as relevant here, when a party will suffer "substantial and irreparable injury to [its] property."  29 U.S.C. § 107(b).  Plaintiffs, however, do not demonstrate a likelihood of irreparable harm that would trigger this exception or warrant enjoining the

---

[6] The parties do not provide caselaw stating otherwise.  Nor is the Court aware of any such caselaw confirming that a court's exercise of jurisdiction to hear constitutional removal violations serves as a categorical exception to the NLGA's jurisdictional restriction on enjoining administrative actions arising out of labor disputes.

[7] For example, although the NLGA bars an injunction of the NLRB proceeding, other remedies such as declaratory relief are not precluded.  *See, e.g.*, *VHS Acquisition Subsidiary No. 7*, 2024 WL 5056358, at *2 (D.D.C. Dec. 10, 2024) (granting plaintiff's motion for summary judgment and declaring that the two-layered removal protection for NLRB ALJs are unconstitutional).  The Court acknowledges that Plaintiffs' Complaint, indeed, seeks declaratory relief in addition to a preliminary injunction.  However, because Plaintiffs' instant Motion only "asks the Court to enter a preliminary injunction prohibiting Defendants and their employees and agents from taking any action to advance the proceedings in [the] NLRB Case," (Mot. at 21), the Court will not review the merits of the removal protection claims at this preliminary injunction posture.  *Cf. VHS Acquisition Subsidiary No. 7*, 2024 WL 4817175, at *1, n.1 (converting the preliminary injunction motion into a summary judgment motion after plaintiff moved for summary judgment on the merits of its removal claims).  Additionally, independent of the NLGA barring injunctive relief here, the proper course to remedy an unconstitutional removal provision entails severing the unconstitutional language from the relevant removal statute, not—as Plaintiffs request—halting the NLRB agency action in its tracks.  *See Axon*, 598 U.S. at 189 ("Only the Court's ability to sever the relevant statute's for-cause removal provision enabled the Board to keep running."); *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508–09 (2010) (severing dual for-cause removal provisions for Public Company Accounting Oversight Board members).

underlying NLRB proceeding.  Plaintiffs persist that being subjected to an administrative proceeding by unconstitutional agency authority, within itself, constitutes an irreparable harm.  *See* (Reply to NLRB at 15) ("Constitutional violations, particularly those involving the separation of powers, are inherently irreparable.").[8]  Their argument is unavailing for two reasons.  First, to warrant injunctive relief, Plaintiffs must demonstrate causal harm,

---

[8] This broad proposition of "inherently irreparable" harm is not only problematic but also unsupported by caselaw.  First, by Plaintiffs' logic, every party subjected to an administrative action could raise unconstitutional removal challenges, whether meritorious or not, as a means of seeking to stop the agency action in its tracks.  Plaintiffs reject the notion that this case involves "the sky-is-falling circumstances," (Reply to TANNC at 9), and suggests that a court could sever any unconstitutional aspect of NLRB's statutory structure, (*id.* at 8).  Yet in their present motion and two reply briefs, Plaintiffs request that the Court *enjoin* all NLRB officers, employees, and agents from taking any further action to advance the underlying administrative action.  *See* (Mot. at 21); (Reply to NLRB at 19); (Reply to TANNC at 9).  Second, Plaintiffs' contention—that *every* removal violation demonstrates inherently irreparable injury and necessitates enjoining the administrative actions—remains unfounded.  *See Collins v. Yellen*, 594 U.S. 220, 274 (2021) (Kagan, J., concurring) ("I also agree that plaintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—*only when* the President's inability to fire an agency head affected the complained-of decision . . . . Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.") (emphasis added) (internal citations omitted) (quoting *Milliken v. Bradley*, 433 U.S. 267, 280 (1977)); *cf. Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971) ("As with any equity case, the *nature* of the [constitutional] violation determines the *scope* of the remedy.") (emphasis added).  Of importance, when Plaintiffs moved for this preliminary injunction, they did not assert that: (1) then-President Joseph Biden was unable to remove NLRB board members or ALJs, and (2) his inability to do so affected the underlying agency action.  Newly-elected President Trump's removal of select NLRB officers—of which the Court takes judicial notice—also does not indicate, without more, that Plaintiffs would have never been subjected to the agency action in the first place; in other words, absent additional details, the Court cannot assume that the President was somehow "displeas[ed] with actions taken by [Defendants] and had asserted that he would remove [Defendants] if the [removal] statute did not stand in the way." *Collins*, 594 U.S. at 260.  There may be several reasons as to why the current President removed some of the named Defendants, and the Court declines to speculate what those reasons may be for purposes of finding a likelihood of Plaintiffs suffering irreparable harm in this present agency action.

meaning they must show that the purported unconstitutional removal protections impact the NLRB proceeding that they seek to enjoin. As it stands, Plaintiffs have not done so. Second, Plaintiffs asserting an "inherently irreparable" injury rests on select quotes extracted from the *Axon* opinion without providing the opinion's proper context. 598 U.S. at 175. Their invocation of *Axon*, therefore, is misplaced and does not support such overbroad assertions for an extraordinary remedy. The Court addresses each issue in turn.

As a preliminary matter, it is well-settled that being subjected to an unconstitutionally structured agency based on removal limitations, alone, does not inherently establish a likelihood of irreparable harm. Rather, the party seeking equitable relief premised on removal restrictions must show that such restrictions impacted the occurrence or nature of the underlying administrative proceeding that it seeks to halt. *See Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 35 F.4th 734, 742–43 (9th Cir. 2022) (emphasizing that the moving party must "show how the unconstitutional removal provision *actually harmed* the party") (emphasis in original) (internal quotation marks omitted) (quoting *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022)); *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021); *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1135 (D.C. Cir. 2017); *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 315–16 (6th Cir. 2022) (collecting circuit court cases), *rev'd on other grounds*, 598 U.S. 623 (2023) (per curiam). *Cf. Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (rejecting the assertion that "a generalized separation of powers, by itself, constituted irreparable harm" for injunctive relief and explaining, "cases finding that a violation of a constitutional right alone constitutes irreparable harm are limited to cases involving individual rights, not the allocation of powers among the branches of government"), *abrogated on other grounds by Garland v. Cargill*, 602 U.S. 406 (2024).

Notably, this well-supported "causal harm" requirement stems from the reasoning discussed in the seminal Supreme Court opinion, *Collins v. Yellen*, 594 U.S. at 220. The *Collins* Court concluded that for-cause removal protection for a single director of the Federal Housing Finance Agency ("FHFA") contravened separation-of-power principles

and the Constitution. *Id.* at 250–51. But the opinion further elaborated that on the issue of relief, the plaintiffs must show that the unconstitutional removal provision affected the underlying agency's action that they seek to void. *Id.* at 257–60; *cf. also id.* at 261 (Thomas, J., concurring) ("[T]o the extent a Government action violates the Constitution, the remedy should fit the injury.").[9] The FHFA's officers, the opinion emphasized, "were properly *appointed*;" thus, notwithstanding the "unconstitutional[] limit[] [on] the President's authority to *remove*" the officers, "there is no reason to regard any of the actions taken by the FHFA . . . as void." *Id.* at 257–58 (emphasis in original); *see also id.* at 261 (Thomas, J., concurring) ("The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract.").[10]

Plaintiffs' bare assertion of an inherently irreparable harm—premised solely on purported unconstitutional removal protections—meets the same fate. Plaintiffs do not allege facts demonstrating, for example, that the removal protections at issue "specifically impact" or alter the NLRB officers' conduct throughout the underlying action. *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *3 (6th Cir. Oct. 13, 2024) (denying plaintiff's motion to stay the district court proceedings and enjoin the NLRB proceeding premised on the same unconstitutional removal claims at issue here); *see also*

---

[9] In *Collins*, the plaintiffs sought both declaratory and injunctive relief at the lower court. 594 U.S. at 227. Once at the Supreme Court, their only "live claim" involved retrospective relief to void the agency's action. *Id.* at 257.

[10] To be precise, this causal harm requirement, as the *Collins* opinion suggests, does not extend to challenges against an administrative action conducted by an unconstitutionally appointed officer. And this distinction between unconstitutional appointment and unconstitutional removal is well-reasoned—an action, for example, taken by an administrative officer who did not possess the constitutional authority to carry out the office functions in the first place is very different from an action taken by a constitutionally appointed officer whose for-cause removal protection is constitutionally unsound but yet had no effect on the lawful administrative action, itself. *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 756, n.6 (10th Cir. 2024) (applying *Collins* to an unconstitutional removal challenge and noting: "Like in *Collins*, Leachco does not challenge the authority of the CPSC commissioners or ALJ Young under the Appointments Clause . . ."), *cert. denied sub nom.*, No. 24-156, 2025 WL 76435 (U.S. Jan. 13, 2025).

*id.* ("For example, [plaintiff] has not shown that the removal protection scheme prevent[ed] superior officers from removing Board members when they attempted to do so or alter[ed] the Board's behavior prior to the proceeding.") (alterations in original) (internal quotation marks omitted) (quoting *Calcutt*, 37 F.4th at 316).[11]  Nor do they assert facts showing that, "but for the allegedly unconstitutional removal provisions, the [NLRB Board members] or [the NLRB ALJ] would have been removed, the [NLRB] proceedings against it would not be occurring, or the proceedings would be different in any way."  *Id.*  (alterations in original) (quoting *Leachco*, 103 F.4th at 757).  In sum, Plaintiffs ask the Court to render unwarranted assumptions to find irreparable injury—namely, that the present agency action against Plaintiffs would not have occurred or would have proceeded differently, but for the statutory removal protections.  The Court, without a sufficient factual basis, will not draw such inferences.[12]

Plaintiffs' efforts to circumvent this causal harm requirement under *Collins* are unavailing.  First, according to Plaintiffs, the causal harm requirement under *Collins* reaches only retrospective, not prospective relief.  (Reply to NLRB at 16).  Multiple circuit courts have, however, overwhelmingly rejected such a distinction, thereby applying *Collins* to both retrospective and prospective relief.  In fact, as another district court noted, "every court of appeals that has dealt with this" retrospective versus prospective distinction has recognized that "the Court's reasoning in *Collins* 'applies with equal force regardless of the relief sought.'"  *Cortes v. NLRB*, No. CV 23-2954 (JEB), 2024 WL 1555877, at *6

---

[11] Two days after the Sixth Circuit's ruling, the Supreme Court denied the plaintiff's emergency application for writ of injunction.  *See YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24A348, 2024 WL 4508993 (U.S. Oct. 15, 2024).

[12] Plaintiffs also advance this theory that irreparable harm results from being "subjected to an administrative process that is tainted by unconstitutional structures [and] imposes unrecoverable litigation and compliance costs."  (Reply to NLRB at 15).  Precedent forecloses such argument.  *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") (internal quotation marks omitted) (quoting *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)); *see also Leachco*, 103 F.4th at 752, n.2.

(D.D.C. Apr. 10, 2024) (quoting *Consumer Fin. Prot. Bureau v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180–81 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2579 (2024)).

Indeed, Plaintiffs' position contradicts caselaw. *See Leachco*, 103 F.4th at 757 (agreeing with "the Second, Fifth, and Sixth Circuits that *Collins*' relief analysis applies to both retrospective and prospective relief"); *Moroney*, 63 F.4th at 180 ("[Respondent] contends that *Collins* is distinguishable because it concerned retrospective relief (disgorgement of funds), whereas this case involves prospective relief (production of withheld documents). We decline to read *Collins* so narrowly."); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 631 (5th Cir. 2022) ("[Plaintiffs] assert that *Collins* applies only to retrospective relief. But *Collins* did not rest on a distinction between prospective and retrospective relief."), *rev'd and remanded on other grounds*, 601 U.S. 416 (2024), *and reinstated in part by* 104 F.4th 930 (5th Cir. 2024); *Calcutt*, 37 F.4th at 316 ("The *Collins* inquiry focuses on whether a harm occurred that would create an entitlement to a remedy, rather than the nature of the remedy, and our determination as to whether an unconstitutional removal protection inflicted harm remains the same whether the petitioner seeks retrospective or prospective relief . . . .") (internal quotation marks omitted). *Cf. NLRB v. Starbucks Corp.*, 125 F.4th 78, 88 (3d Cir. 2024) ("Though we need not definitively decide the issue today because we lack jurisdiction under the NLRA, it is worth noting that other courts of appeal have declined to distinguish between retrospective and prospective relief when applying *Collins*."). Accordingly, the causal harm requirement established in *Collins* remains applicable here.

Second, *Axon* neither undermines this causal harm requirement for an injunctive remedy nor cures the defects in Plaintiffs' bare assertion of irreparable injury. The *Axon* opinion, in Plaintiffs' view, stands for the proposition that having to participate in an unconstitutionally structured agency, without more, qualifies as an irreparable harm warranting the issuance of a preliminary injunction. (Reply to NLRB at 15–16). *Axon* does not render such far-reaching conclusions. Recall that in *Axon*, the Supreme Court considered a statutory jurisdiction question—namely whether respondents of SEC and FTC

-15-

agency actions may first pursue in federal district courts collateral challenges to the agencies' constitutional structures. *See* 598 U.S. at 185–86 (concluding that Congress, through the relevant statutory review schemes for SEC and FTC actions, did not intend to "oust[] district courts of jurisdiction" to review these constitutional structure challenges); *see generally supra* Section III(A) and n.5. True, the *Axon* Court stated that being subjected to an unconstitutionally structured agency presents a "here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191. But context and the narrow issue presented before the Supreme Court matter, and there, the Court made such statements in the context of analyzing under the *Thunder Basin* factors, whether federal district courts may exercise its original jurisdiction to hear the constitutional challenge, or whether the ordinary statutory-review schemes preclude such jurisdiction. *Id.* at 195–96 (citing *Thunder Basin*, 510 U.S. at 212). This ruling did not stand for the general proposition that all removal challenges, without more, constitute irreparable harm for purposes of securing the extraordinary remedy of a preliminary injunction.

Indeed, several circuit court opinions, written post-*Axon*, have addressed similar arguments raised at the preliminary injunction stage and confirm this point. *See Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1336 (D.C. Cir. 2024) ("Put another way, *Axon* at most says that, as a matter of statutory jurisdiction, a federal-court challenge to an unconstitutional appointment can begin before the agency acts. It does not say that every agency proceeding already underway must immediately be halted because of an asserted constitutional flaw."); *YAPP*, 2024 WL 4489598, at *3 (same); *Leacho*, 103 F.4th at 758–60 (noting that the Supreme Court emphasized that its "here-and-now-injury" language involved the issue of standing and not the issue of entitlement to certain types of relief); *see also Collins*, 594 U.S. at 258, n.24 ("What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction. We held that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action that was taken by such an officer . . . . But that

holding on standing does not mean that actions taken by such an officer are void *ab initio* and must be undone.") (internal citation omitted) (citing *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 209–12 (2020)). This conclusion, the Court finds, is well-reasoned because, as the Tenth Circuit noted, Plaintiffs' proposed interpretation of *Axon* "would be converted into a broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised." *Leachco*, 103 F.4th at 759.

Thus, it is unsurprising that district courts and the Sixth Circuit have denied recent preliminary injunction motions challenging the NLRB removal protections and seeking to halt the agency's proceedings, in part, due to an inadequate showing of likely irreparable harm. *See, e.g.*, *VHS Acquisition Subsidiary No. 7*, 2024 WL 4817175, at \*5–7; *VHS Acquisition Subsidiary No. 7*, 2024 WL 4871725 (D.D.C. Nov. 22, 2024) (reiterating plaintiff's failure to show a likely irreparable harm and therefore denying its emergency motion for a stay pending appeal of the order denying a preliminary injunction motion); *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-12173, 2024 WL 4119058, at \*14 (E.D. Mich. Sept. 9, 2024), *aff'd by* 2024 WL 4489598, at \*3. In sum, Plaintiffs' claims do not demonstrate a likelihood of irreparable injury, even under the Ninth Circuit's sliding scale approach, and certainly do not warrant granting such an extraordinary remedy of abruptly halting the NLRB action.

//
//
//
//
//
//
//
//
//

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

DATED: February 5, 2025

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-18-